# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRESTON LEE, <br><br> Plaintiff, <br><br> v. <br><br> JIN, *Wexford Administrator/Corizon Medical Director*; HEALTH CARE ADMIN IRMA VIHLIDAL; NURSE KEN KUTCHER; SUPERINTENDENT LOUIS FOLINO; JOHN WETZEL, *Secretary of the Pennsylvania DOC*; WEXFORD HEALTH SERVICES, <br><br> Defendants. | Civil Action No. 13 – 1255 <br><br> Chief Magistrate Judge Lisa Pupo Lenihan <br><br> ECF Nos. 32, 41, 44 |

## MEMORANDUM OPINION

Preston Lee ("Plaintiff") is a state prisoner currently confined at SCI-Greene. He initiated the above captioned prisoner civil rights action on August 29, 2013, alleging that defendants were deliberately indifferent to his serious dental needs when they denied him dental care for non-medical reasons – *i.e.*, because dental care is not provided to inmates on weekends and holidays in order to save money. Defendants now move to dismiss Plaintiff's Amended Complaint, and for the following reasons their motions will be granted.

A. Background

Plaintiff alleges the following facts in his Amended Complaint (ECF No. 25). Plaintiff was in an altercation while in the exercise yard at SCI-Greene on October 14, 2012, a Sunday. Id. at ¶ 1. As a result, he sustained injuries to his mouth, including fractured gums and a tooth

1

that was knocked out. Id. at ¶¶ 1-2. He was seen by Nurse Ken Kutcher who placed Plaintiff in a medical holding cell (the infirmary) and provided Plaintiff with gauze to stop the bleeding. Id. at ¶ 2. Dr. Jin was notified of Plaintiff's condition, and although he did not examine Plaintiff, he ordered a soft diet and placed Plaintiff on the dentist's list so that he could be seen by a dentist the next morning. Id. at ¶¶ 2, 7, 9. Later on that evening, Nurse Kutcher gave Plaintiff a Tylenol and tried to put the missing tooth back into its socket. Id. at ¶ 3.

Plaintiff was seen by Dr. Krak, the dentist, at 8:45 a.m. the following morning. Id. at ¶ 4. Dr. Krak took x-rays of Plaintiff's mouth and told Plaintiff that he needed emergency oral surgery to save the teeth that were damaged. Id. Dr. Krak also told Plaintiff that it was too late to save the missing tooth because "that operation would have had to [have] taken place within thirty to forty-five minutes of the incident." Id. at ¶ 6.

According to allegations in Plaintiff's original Complaint, Dr. Krak performed surgery on both gum lines and placed a wire along the teeth to keep everything in place. (ECF No. 5 at ¶ 8.) Dr. Krak gave Plaintiff Vicodin and Motrin for the pain. Id. He saw Plaintiff again the following day, October 16, 2012, and noted that Plaintiff's top gum line was still loose. Id. at ¶ 9. He again gave Plaintiff Vicodin and Motrin for the pain and antibiotics to prevent infection. Id.

Plaintiff also stated in his original Complaint that he saw an oral surgeon, Dr. W. Chung, on November 18, 2012. Id. at ¶ 11. Dr. Chung informed Plaintiff that the DOC waited too long to send Plaintiff to him and that as a result Plaintiff's teeth would likely have to come out. Id.

Plaintiff was seen by Dr. Krak again on November 21, 2012, at which time Plaintiff had an infected tooth removed. Id. at ¶ 13.

Plaintiff states that due to cost saving measures, dentists and dental staff are not on site during weekends and holidays so inmates have to wait until a week day in order to receive dental care. (ECF No. 25. at ¶ 8.) This, he says, denies inmates medical care for non-medical reasons. Id. at ¶ 9. He also alleges that CHCA Irma Vihlidal, Superintendent Louis Folino and Secretary of the DOC John Wetzel have done nothing to eliminate this unlawful policy and/or practice. Id. at ¶¶ 10-12. Finally, he alleges that the DOC contracts with Wexford to provide dental care to inmates and that Wexford is engaged in this unlawful policy or practice by not having their dentists and dental staff work on weekends and holidays. Id. at ¶ 13.

B. Standard of Review

All defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

C. Discussion

3

1. *Wexford*

Wexford Health Services became the contract provider of medical care to the Pennsylvania Department of Corrections effective January 1, 2013. *See* ECF No. 45-1 (Affidavit of Joe Ebbitt, Director of Risk Management, HIPPA Compliance and Legal Affairs for Wexford Health Sources, Inc.) As counsel for Wexford points out, all of Plaintiff's allegations pertaining to his actual dental care occurred during the year 2012. Secondly, while Wexford has a contract for the provision of medical care at the Pennsylvania DOC's prisons, including SCI-Greene, it does not provide dental care or employ dental staff. *See* ECF No. 45-1. Therefore, Wexford is not a proper named defendant and will be dismissed accordingly.

2. *Eighth Amendment Claim against Dr. Jin and Nurse Kutcher*

Plaintiff alleges that defendants Dr. Jin and Nurse Kutcher were deliberately indifferent to his serious dental needs because they denied him emergency dental care and made him wait until Monday morning to see a dentist.

In order to state such a claim, a plaintiff must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care,

4

delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Even if Plaintiff's dental injuries were sufficiently serious enough for purposes of stating an Eighth Amendment claim, his allegations belie any claim that Dr. Jin and/or Nurse Kutcher were deliberately indifferent to Plaintiff's dental needs. Plaintiff concedes that he was given dental treatment, albeit not immediately because the incident occurred on a Sunday. He was examined by Nurse Kutcher, placed in the infirmary, given gauze and Tylenol, and seen by the dentist the following morning, per order of Dr. Jin, who also ordered Plaintiff a soft diet. Plaintiff's complains that he was not given x-rays or actually seen by Dr. Jin after the incident and that he was not seen immediately by a dentist. However, this is insufficient to state a claim that either Dr. Jin or Nurse Kutcher was deliberately indifferent to Plaintiff's injuries. Plaintiff states that Dr. Jin was notified as to Plaintiff's condition and Dr. Jin decided to place Plaintiff on the list to see the dentist the next morning. Dr. Jin and Nurse Kutcher each provided Plaintiff with immediate medical attention, and, while Dr. Jin did not have x-rays taken or believe that Plaintiff's situation was an emergency so as to have a dentist come to the facility that night, this amounts to nothing more than a simple disagreement in medical judgment, which cannot serve as the basis for an Eighth Amendment claim. *See* White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Thus, Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Jin and Nurse Kutcher will be dismissed.

  3. *Eighth Amendment Claim against CHCA Vihlidal, Superintendent Folino and Sec. Wetzel*

Plaintiff alleges that in order to save money, these supervisory defendants have a policy or practice of not having dentists or dental staff work on weekends (or holidays), which he

contends amounts to deliberate indifference. "[T]o hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001).

While dentists are allegedly not on site at SCI-Greene on weekends and holidays, defendants contend that it is the DOC's policy that inmates are provided access to emergency health care services (including dental) on a seven day a week, 24 hour basis. Indeed, Plaintiff even admits that this is reflected in Pennsylvania DOC Policy Statement 13.2.1, "Access to Health Care Procedures Manual", § 1.A.2. Therefore, assuming not having a dentist physically in the facility on weekends amounts to a policy or practice, this policy or practice alone did not create "an unreasonable risk" that an inmate's serious or emergency dental needs would be ignored on the weekends. Importantly, Plaintiff does not allege that defendants had a policy or practice of not providing inmates with *emergency* dental treatment on weekends. He only alleges that because he had to wait until Monday morning to see a dentist, he permanently lost his tooth. Thus, the real issue is that Plaintiff believes his dental situation should have been treated as an "emergency", and because it was not he suffered an irreparable injury, according to Dr. Krak.

Again, Plaintiff's allegations amount to nothing more than a disagreement with Dr. Jin's assessment. Even though he complains that Dr. Jin never examined or took x-rays of his mouth, it is undisputed that Nurse Kutcher did evaluate Plaintiff and relayed his findings to Dr. Jin who

6

decided to put Plaintiff on the list to see the dentist the following morning rather than treat the situation as an emergency. At most, Plaintiff's allegations sound in medical malpractice, but it is well-settled that an allegation of "mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. This principle may cover . . . [an allegedly] erroneous calculus of risks and costs . . . ." Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000).

Furthermore, Plaintiff's allegation that the DOC does not have dentists on staff during the weekends because of cost constraints does not support a claim of deliberate indifference. The Third Circuit held in Winslow v. Prison Health Services, 406 F. App'x 671 (3d Cir. 2011), that the naked assertion that a defendant considered or operated based on an effort to contain costs does not set forth an adequate factual basis to support a claim predicated on deliberate indifference. Id. at 674. In Winslow, the prisoner alleged that he had been diagnosed with a hernia and that the decision to treat his hernia with a belt instead of with surgery was improperly motivated by non-medical factors, principally cost. Id. at 672-73, 675. The plaintiff alleged that he was harmed by the prison's medical provider's "policies to save money[.]" Id. at 674. The Third Circuit held as follows:

> For one thing, the complaint's allegation that Winslow was harmed by "policies to save money" is exceedingly conclusory; the complaint does not provide any indication either of (1) what the relevant policies are, (2) what basis he has for thinking that "policies to save money" affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies. More fundamentally, the naked assertion that Defendants considered cost in treating Winslow's hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of cost constraints under which law-abiding citizens receive treatment. *See* Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, but medical personnel cannot

simply resort to an easier course of treatment that they know is ineffective." (citations omitted)); Caines v. Hendricks, No. 05-1701, 2007 U.S. Dist. LEXIS 9453, 2007 WL 496876 at *8 (D. N.J. Feb. 9, 2007) ("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

Winslow, 406 F. App'x at 674-75.

As stated in Winslow, the deliberate indifference standard "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." Reynolds v. Wagner, 128 F.3d 166, 275 (3d Cir. 1997). "Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatments of choice." Brightwell v. Lehman, No. Civ.A. 03-205J, 2006 WL 931702, at *8 (W.D. Pa. April 10, 2006). In this regard, the Court notes that the Eighth Amendment does not require a prison to provide an inmate "with the most sophisticated care money can buy." United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987). Nor are prison medical officers required to be blind to assessing the risks and costs of various treatment options. Furthermore, it is also clear that a dispute regarding whether doctors erred in this cost-benefit assessment, which is the essence of the medical art, sounds in negligence only and may not be cast as a constitutional violation.

For all these reasons, the Eighth Amendment claims against CHCA Vihlidal, Superintendent Folino and Secretary Wetzel will be dismissed.

  4. *Fourteenth Amendment Claim*

To establish a due process claim under the Fourteenth Amendment, a plaintiff must provide evidence of (1) the existence of a constitutionally protected liberty or property interest;

and (2) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents v. Roth, 408 U.S. 568 (1972).

Plaintiff's due process claim appears to be based on the same facts as alleged to support his Eighth Amendment claim. Thus, it is barred by the "more specific provision" rule (a.k.a. the "explicit textual source" rule) as stated in Albright v. Oliver, 510 U.S. 266 (1994), where the Supreme Court stated that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Id. at 273 (quoting Graham v. Connor, 490 U.S. 386 395 (1989)).

Plaintiff also appears to allege that defendants violated his right to due process when they failed to adhere to Pennsylvania Department of Corrections Policy Statement 13.2.1, Access to Health Care (effective June 28, 2004), which states at § 1.A.2.a, "Every inmate shall have access to regular and specialized medical, mental health, dental services, and emergency health care services on a seven day a week, 24-hour basis." Even if Plaintiff's situation amounted to an emergency, state agency guidelines do not, in and of themselves, create a right, and do not have the force of law. *See* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); *see also* Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation). As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation. Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)). *See also* Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative

regulations does not equate to a constitutional violation."); Walker v. Zenk, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part by* 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Consequently, the alleged violation of prison policy of not providing inmates with emergency dental care seven days a week, twenty-four hours a day does not amount to a due process violation in and of itself.

To the extent Plaintiff is attempting to make out a substantive due process claim, again, his allegations fail to state a claim because not having dentists or dental staff on site over the weekends does not shock this Court's conscience. *See*, *e.g.*, United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa., 316 F.3d 392, 399-400 (3d Cir. 2003) ("our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").

Accordingly, Plaintiff's Fourteenth Amendment claim will be dismissed.

5. *Equal Protection Claim*

Plaintiff alleges that defendants violated his right to equal protection because they did not provide him with timely dental care. However, the alleged facts and circumstances underlying Plaintiff's Amended Complaint simply do not support an equal protection claim.[1] Therefore, it too will be dismissed.

---

[1] The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235,

*6. Amendment of Complaint*

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing, irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile. A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims for which relief may be granted.

                                                                             _____

                                                                             Lisa Pupo Lenihan
                                                                             Chief United States Magistrate Judge

cc:  Preston Lee
      GH 8160
      175 Progress Drive
      Waynesburg, PA 15370
      (*Via First Class Mail*)

      Counsel of Record
      (*Via CM/ECF Electronic Mail*)

---

1267 (3d Cir. 1996). The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir. 1994). Additionally, an equal protection violation in a prison setting requires proof that an inmate "was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [The inmate] also must show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotation marks omitted); *see also* Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985).